## Johnson's Estate.

*Res adjudicata—Adjudication on former account in same estate—Law of case.*

1. Where adjudications upon former accounts of trustees in the same estate go no further than to determine the validity of a trust for life, and do not confirm the validity of remainders to take effect after the death of the life-tenant, such adjudications are not *res judicatæ* upon the audit of a subsequent account of the same trustees at which the validity of the exercise of a power of appointment creating the gifts in remainder is raised.

*Powers—Exercise of power to appoint to class.*

2. Where it appears from the will that the testator's intention was to allow the donee of the power to select out of a given class, the donee cannot appoint those not members of the class.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1887, No. 214.

The facts and relevant provisions of the will appear from the adjudication of the auditing judge, Henderson, J.:

"By the fifth item of his will the testator devised one-half of his real estate to his executors and directed them to pay the net income to his wife, Maggie W. Johnson, for life. She predeceased the testator. He further provided:

"'And after her death I direct my said Trustees to pay over the said income to my brother Walter E. Johnson in the same way during the whole term of his natural life. And upon his death then to hold the said one-half

1 D. & C.

part of my real estate in trust for the only proper use and behoof of such child or children of him my said brother Walter E. and for such estate or estates as he may by his last will and testament or any instrument in the nature thereof direct, limit and appoint. And in default of such appointment, then in trust for the only proper use and behoof of such child or children and issue of deceased children as he may leave surviving him so however that the issue of any deceased child or children shall take only the share the parent would have taken if living. But should my said brother Walter E. die without leaving children or grandchildren, then and in that event it is my will that my said Trustees hold the said half part of my real estate to and for the only proper use and behoof of such of my brothers Peter, Philip, Edwin and Albert as may survive my said brother Walter E., share and share alike.'

"Walter E. Johnson died July 18, 1909, leaving to survive him but one child, Elwood T. Johnson, and no issue of any deceased child.

"Walter E. Johnson left a will, whereby he provided, *inter alia:*

"'Now therefore in exercise of said power of appointment, I give and bequeath to my son, Elwood T. Johnson, the sum of $10,000.00, absolutely. All the rest, residue and remainder of said Estate, whether real or personal, over which I have the power of appointment, I give, devise and bequeath to Charles Carver, the Trustee named in the last will of the said William Johnson . . . to pay the said income to my son, Elwood T. Johnson, for and during the term of his natural life. And upon the death of my said son, then In Trust to hold the same for and to pay the Income thereof to his child or children or the issue of any deceased child or children,. share and share alike, until such child or children reaches or reach the age of twenty-one years, at which time I direct my Trustee to pay the principal of his or her share thus held In Trust to him or her absolutely. And in the event of my said son, Elwood T. Johnson, dying without issue, then I order and direct my said Trustee to pay the principal of said Trust Estate to such of my brothers as may be entitled as beneficiaries thereto under the said Will of the said William Johnson.'

"Elwood T. Johnson died Aug. 31, 1921, without issue, leaving a will, whereby he gave his entire estate to his wife, Adah E. Johnson, and appointed her executrix.

"Mr. Carver and Mr. White, on behalf of Adah E. Johnson, executrix and legatee of Elwood T. Johnson, claim that the appointment in the will of Walter E. Johnson is void, and that the principal of the trust vested absolutely in Elwood T. Johnson under the will of William Johnson, on the ground that the power of appointment was a special power to select beneficiaries out of a class of which Elwood T. Johnson was the only member, and that the appointor could not exercise it in favor of others.

"An examination of the authorities shows that a liberal construction has been given to the exercise of a special power where the appointor has selected the beneficiaries within the designated class. The power may authorize preferences among appointees: Graeff *v.* De Turk, 44 Pa. 527; Boyle's Estate, 12 Phila. 83; life estates may be appointed, and even a further power to appoint conferred upon the life-tenant, though the exercise of the latter may prove to be void: McClellan's Estate, 221 Pa. 261; Lewis's Estate, 269 Pa. 379.

"On the other hand, a strict construction has been given to the description of the class to be selected, and in no case has an appointment been permitted to a stranger, nor the class extended to include persons who were not clearly within its limits.

Johnson's Estate.

"In Horwitz v. Norris, 49 Pa. 213, and Fotterall's Estate, 2 Dist. R. 146, a power to appoint to the life-tenant's children and issue of deceased children was held not to authorize the appointment to the issue of living children. A power to appoint among children does not authorize the creation of trusts for the lives of the children, with remainder subject to a further power to appoint to persons entitled under the intestate laws: Smith's Estate, 4 W. N. C. 265. And in Wickersham v. Savage, 58 Pa. 365, and Pepper's Appeal, 120 Pa. 235, where there was but one member in the class to be appointed, he took the whole estate.

"Wickersham v. Savage and Pepper's Appeal cannot be distinguished from the present case.

"Here the words of the will are: 'To hold the said one-half part of my real estate in trust for the only proper use and behoof of such child or children of him my said brother Walter E. and for such estate or estates as he may by his last will . . . limit and appoint.'

"In Wickersham v. Savage the testator gave the estate 'to and among the children and issue of the said John, in such shares and proportions and for such estates as he by his last will or other appointment in writing shall direct.'

"In Pepper's Appeal the gift was to 'such of his children and issue, and in such shares and for such estates as he shall by last will appoint.'

"In both of these cases, like the present, the appointor had but one child.

"In Wickersham v. Savage the appointment was in trust for the child for life, with a further power of appointment in the child, and in default thereof to his heirs. Chief Justice Thompson, for the Supreme Court, declared the appointment void, saying: 'The appointee is one person; he takes the entire estate in remainder as the representative of a class. Of course, in that case no appointment could vary his interest. It would be a vain act to appoint.'

"In Pepper's Appeal the appointment was in trust for the child until twenty-one years after the death of certain named persons, with a gift over to the child's issue. Mr. Justice Paxson said: 'With but one member of the class in existence, there can be but one distribution, and, under such circumstances, it is difficult to see the utility of any appointment whatever.'

"It is impossible, in view of these decisions, to find any validity in the appointment made by Walter E. Johnson. He left to survive him but one child, who, being the sole member of the designated class, had a vested interest not to be divested by an appointment to a stranger.

"We must, therefore, refer to the donor's will for his disposition of the estate in default of an appointment, and there we find a gift to 'such child or children and issue of deceased children' as Walter E. Johnson might leave surviving him. Thus, Elwood T. Johnson, the sole issue of Walter E. Johnson, takes absolutely, and the brothers may not take under either will.

"Counsel representing the interests of the brothers of the testator contended that the validity of the appointment was res adjudicata.

"Two accounts of the trustee have been filed since the death of Walter E. Johnson, the donee of the power, on July 18, 1909.

"On Oct. 14, 1909, Judge Penrose confirmed the third account of the trustee (which, like the present account, included real estate in which both Emily J. Woll and Walter E. Johnson had equal life interests), and awarded principal to be held and income applied in accordance with the will of William Johnson—income after the death of Walter E. Johnson being payable in equal shares to Emily J. Woll and 'his son, Elwood T. Johnson, under power of

1 D. & C.

appointment exercised by his will.' Annexed to this adjudication is an agreement signed by Elwood T. Johnson, as follows:

" 'I, Elwood T. Johnson, the Appointee under the Will of Walter E. Johnson, deceased, to receive, *inter alia*, the sum of Ten Thousand Dollars from the said Estate of William Johnson, Deceased (as reference to said Will of Walter E. Johnson, Dec'd, will more fully appear), do hereby declare that I will not demand payment of said sum of Ten Thousand Dollars from the Trustee under the Will of William Johnson, Dec'd, for the period of Five years from this date, or until the Fourth day of October, 1914, unless Emily J. Woll, formerly Emily Johnson, life tenant under said Will, should die prior to that time, in which event said sum shall become immediately payable. It being my wish and request that the said sum of Ten Thousand Dollars shall remain and be retained in the Trust Estate of said William Johnson, and the Income thereof paid to me until payment of said sum shall become due to me or my legal representatives, as aforesaid.'

"On May 2, 1915, Judge Gummey confirmed the fourth account of the trustee, reciting in his adjudication:

" 'Walter E. Johnson, prior to his death, executed his last will and testament, duly probated, whereby he executed the power of a gift to his son, Elwood T. Johnson, of $10,000 absolutely and gave the residue thereof to the accountant in trust to pay the income to his said son, Elwood T. Johnson, for life, with remainder for the use of said son's children, etc., not necessary to recite.

" 'Elwood T. Johnson is married, but without issue; he requests that said sum of $10,000 be not paid to him at this time, but remain as part of the trust estate, in accordance with his agreement attached to the adjudication filed Oct. 14, 1909, upon the trustee's third account, and the provisions of which agreement he desires extended, without mentioning any definite time.'

"No claim was made by Elwood T. Johnson at either of these audits that the appointment was void, and no discussion of the question appears in either adjudication.

"The following question, therefore, is submitted for my decision: Is Elwood T. Johnson's estate bound by his acquiescence in the awards made by the above adjudication?

"There are many decisions on the books upholding the appointment of life estates, though the remainder might be bad (see cases cited in McClellan's Estate, 221 Pa. 261, and Lewis's Estate, 269 Pa. 379); and, further, it could not be said before the death of Elwood T. Johnson that he would die without issue, which issue might, under a possible construction of the donor's will, be included in the class to be appointed; and either of these reasons would be sufficient to uphold the appointment for the life of Elwood T. Johnson to await the determination of future questions at his death.

"The appointment to the brothers cannot be sustained under any interpretation of the donor's will. Walter E. Johnson could appoint in favor of his children, and possibly their issue. There was only one in the class, as in Wickersham v. Savage, 58 Pa. 365, and Pepper's Appeal, 120 Pa. 235, and, hence, this son takes the whole fund."

*C. Oscar Beasley*, for exceptants; *Alex. Henry Carver* and *Thos. Raeburn White*, contra.

GEST, J., March 31, 1922.—We do not think that any elaborate discussion is necessary to vindicate the adjudication of the auditing judge in this case. The main question with which the argument of the exceptants is concerned

is that of *res judicata*, and, in our opinion, the adjudications of Judge Penrose in 1909 and of Judge Gummey in 1915 did not go further, if they went that far, than to determine the validity of the trust for the life of Elwood T. Johnson, and did not confirm the validity of the remainders after his death to the testator's brothers, which, so far as the exceptants are concerned, were clearly invalid. It needs no argument to show that they are not entitled, either, first, under the will of William Johnson, in default of appointment by Walter, as, in that event, Elwood, the surviving child of Walter, would take, for the limitation over to William's brothers is only in case Walter should die without leaving children; or, secondly, under the will of Walter, the donee of the power, for his appointment to William's brothers transcended his power. If, as it may be argued, the appointment made by Walter of a life estate in trust for Elwood was valid under the doctrine of Boyle's Estate, 12 Phila. 83 (better reported in 5 W. N. C. 363), and Lewis's Estate, 269 Pa. 379; Farwell on Powers (2nd ed.), 306, it would, of course, be clear that Elwood could not have claimed the estate at these audits. And if, under the will of William Johnson, his son Walter, the donee of the power, had the right to appoint, not merely in favor of his children, but grandchildren, who are mentioned in the alternative limitation in default of appointment, it is also clear that Elwood could not have claimed the *corpus* at these audits, but the trustees must have continued to hold the estate until his death, in order to protect the interests of any children he might have left him surviving. Had Elwood, therefore, made his claim at these audits, it is not to be supposed that it would have been supported; but no such questions were raised, and the record, in our opinion, merely shows that Elwood acquiesced in the award to the trustees, just as he agreed that the $10,000 bequest to him should remain indefinitely in their hands. To go to the extent of the argument of counsel for the exceptants and hold that because Elwood did not claim an absolute estate at the audits in 1909 and 1915, the invalid appointment in the will of Walter in favor of William's brothers was to be read into the will of William, would be to go beyond any decision that can be found.

The exceptions are dismissed and the adjudication is confirmed.